IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ARKADIY BANGIYEV, )
)
)
Petitioner, ) Criminal Action No. 1:14-cr-206
v. ) Civil Action No. 1:16-cv-564
) Hon. Liam O'Grady
UNITED STATES OF AMERICA )
)
Respondent. )
)

## MEMORANDUM OPINION

This matter comes before the Court on pro se Petitioner Arkadiy Bangiyev's Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 781) and his Motion requesting bail release pending adjudication of the aforementioned motion to amend his sentence. (Dkt. No. 812). Mr. Bangiyev petitions the court to vacate or amend his sentence on the grounds that it was excessive relative to his co-defendants and his role in the criminal conspiracy for which he pleaded guilty. Mr. Bangiyev contends that the sentencing discrepancy was caused by the ineffectiveness of his then counsel. Mr. Bangiyev also petitions the court to release him on bail pending the resolution of the Motion. For the reasons stated below, the Motions are hereby DENIED WITH PREJUDICE.

**I. Background**

On August 7, 2014, Mr. Bangiyev, and numerous co-defendants, were indicted for participation in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d) and conspiracy to commit multiple counterfeiting offenses in violation of 18 U.S.C. §§ 371, 471, 427, 473, and 474. Dkt. No. 203. The indictment alleged that Mr. Bangiyev participated in an international conspiracy and criminal enterprise to counterfeit United States currency from 2004 to 2014. *Id.*

Mr. Bangiyev participated in the conspiracy by distributing counterfeit currency on behalf of the criminal enterprise, leasing warehouse space for the benefit of the enterprise, sending raw materials used for counterfeiting to members of the criminal enterprise, and fraudulently constructing transactions to avoid detection of the counterfeit currency. Mr. Bangiyev engaged in the criminal enterprise with numerous co-defendants including his brother, Eduard Bangiyev.

The indictment presented in this Court was not Mr. Bangiyev's first charge relating to the conspiracy. In March 2007, Mr. Bangiyev was arrested and charged in the Eastern District of New York for the distribution of approximately $100,000 in counterfeit notes. In January 2009, Mr. Bangiyev was convicted at trial in New York and sentenced to five years of probation, a $100 special assessment, and a $30,000 fine.

Mr. Bangiyev reached a plea agreement with the Eastern District of Virginia United States Attorney's Office on the 2014 RICO charges. Dkt. No. 505. Pursuant to the plea agreement, Mr. Bangiyev pleaded guilty to participating in the RICO conspiracy. *Id.* The charges of conspiracy to commit counterfeiting offenses were dropped as a condition of the plea agreement. *Id.* Mr. Bangiyev also agreed to forfeit all interests in any assets attained through the conspiracy. *Id.* The Government agreed to set the limit of the value of these assets (the "fraud loss") in the range of $7 million to $20 million, with the condition that the defendant was entitled to argue for a lower amount of fraud loss. *Id.* The amount of fraud loss affected the amount the Government could recover in forfeiture and the calculation of Mr. Bangiyev's sentence. Mr. Bangiyev also waived his right to directly appeal his sentence. *Id.* Mr. Bangiyev pleaded guilty on February 5, 2015. Dkt. No. 528. Mr. Bangiyev and his brother appeared together during the plea hearing, engaged in the colloquy together, and pleaded to substantially the same statement of facts and charges. *Id.*

On May 28, 2015, the Court conducted a hearing to calculate the defendants' fraud losses. Dkt. No. 643. Mr. Bangiyev and his brother appeared together at the hearing and jointly advanced arguments in support of their positions. The hearing lasted four hours and five minutes during which time the Court received testimony from Marybeth Dellibovi, who conducted the forensic analysis of the counterfeiting materials for the Secret Service, and Special Agent Adam Gaab, who participated in the arrest of Mr. Bangiyev. Counsel for Mr. Bangiyev, Mr. Greenspun, crossed Ms. Dellibovi on whether the counterfeit bills which were attributed to the conspiracy could have been produced by a different counterfeiter using the same materials and equipment. *Id.*, 56:6-16. Mr. Greenspun also re-crossed Ms. Dellibovi on the source of the currency which Ms. Dellibovi analyzed and attributed to Mr. Bangiyev. *Id.*, 67:14-15. Ms. Dellibovi averred that she received the currency from multiple sources including some from Mr. Bangiyev's prior conviction. *Id.*, 67:16-20.

After conclusion of the testimony and arguments from counsel, the Court found that "the evidence establishes that the Bangiyevs were reasonably aware of between 7 and $20 million [in fraud loss]." *Id.*, 154:25-155:1. The Court based this calculation not only on the seizure of $2.6 million during the arrest "but also the evidence that Ms. Dellibovi testified about and the quantity of the counterfeit currency that was recovered[.]" *Id.*, 155:2-5. The Court also "looked at the printing presses. The equipment that is ordered and used[,]", and the duration of the Bangiyev's involvement in the conspiracy. *Id.*, 155:11-15. By contrast, the Court found that the other defendants "were here for a period of weeks and were involved in and were reasonably aware of the generation of over 2.5 but less than $7 million." *Id.*, 156:5-7.

On September 21, 2015, the Court sentenced Mr. Bangiyev to 108 months incarceration, three years of supervised release, and a $100 special assessment. Dkt. No. 773. As with the

earlier hearings, counsel for the brothers presented a consistent argument on some of the grounds for sentencing and the Court permitted the brothers to appear together during the hearing. *Id.* at 2:15 – 2:19. Specifically, Mr. Bangiyev's counsel, Mr. Greenspun, requested that the brothers appear at the sentencing together because counsel for the brothers had "broken up arguments as far as forfeiture particularity and so on. On those fronts, things appear to be fairly consistent." *Id.* Mr. Greenspun and Mr. Bangiyev's brother's counsel alternated speaking during the hearing and expounded on each other's arguments to modify the forfeiture, delimit the brothers' role in the RICO conspiracy, and advocate for a lower fraud loss calculation. On the strength of the representations at sentencing, the Court declined to disturb its earlier fraud loss calculation. Ultimately, the Court found that Mr. Bangiyev had a criminal history of 0 and an offense level of 29 resulting in a guideline range of 87-108 months incarceration for the RICO conspiracy. As noted above, the Court sentenced Mr. Bangiyev to 108 months.

A number of Mr. Bangiyev's co-defendants received lower periods of incarceration in connection with their guilty pleas. Mr. Boaz received a 36-month sentence and Mrs. Borohov received a 24-month sentence. Mr. Bangiyev's brother received 96 months.

On October 28, 2015, the Court issued an Amended Order of Forfeiture which fixed the amount of fraud loss at $20 million. Dkt. No. 736. The Court found that Mr. Bangiyev "knew about at least $20 million as he was involved at the higher levels of the conspiracy and financed some of the operations." *Id.* at 7.

On May 20, 2016, Mr. Bangiyev collaterally challenged his conviction through the instant Motion. Dkt. 781. The Court ordered the Government to answer the Motion. Dkt. No. 783. The Government timely answered. Dkt. No. 793. Mr. Bangiyev has not filed a response to

the Government's opposition to the Motion. Mr. Bangiyev subsequently requested bail release pending adjudication of the aforementioned Motion to amend his sentence. Dkt. No. 812.

## II. Legal Standard

A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing 28 U.S.C. § 2255). The petitioner bears the burden of proving his grounds for relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

A claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *See United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). In *Hill v. Lockhart*, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). To satisfy the first part of the *Strickland* test, petitioner must establish that counsel failed to provide reasonably effective assistance, that is, the counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, petitioner must "show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Importantly, a court need not review the reasonableness of

counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697).

### III. Discussion

Mr. Bangiyev's two motions are consolidated for the purposes of this memorandum opinion. First, the Court addresses Mr. Bangiyev's motion to amend his sentence pursuant to § 2255. Because the Court's Order resolves the § 2255 issue, Mr. Bangiyev's motion to receive bail pending its resolution is also denied.

Mr. Bangiyev contends that, but for the ineffective assistance of his counsel, he would not have received a significantly harsher sentence imposed upon him relative to the co-defendants. Mr. Bangiyev points to the following specific instances of ineffective assistance: (1) failure to argue for a lower fraud loss amount than the $7 million to $20 million range found by the Court; (2) failure to argue for Mr. Bangiyev's limited role in the conspiracy relative to his co-defendant Itzhak Loz; (3) failure to argue that Loz's statements were not credible and therefore should have been discounted in the fraud loss calculation; (4) failure to challenge the sentencing guideline calculation on double jeopardy grounds; (5) failure to adequately explain the plea agreement and the ramifications of the fraud loss calculation. The Court bifurcates these claims into two categories. Issues (1), (2), (3), and (5) were addressed by the Court in the hearings and are analyzed together. Issue (4) was not raised during the hearings and is separately addressed.

#### A. The Court's Findings During the Hearings

The Court reviews its own findings during the prior hearings in this matter to resolve issues (1), (2), (3), and (5). This review demonstrates that Mr. Bangiyev's sentence was supported by the facts elucidated at the fraud loss hearing and the sentencing and that Mr. Bangiyev was not prejudiced by the strategic decisions made by his able counsel.

With respect to the first issue, the failure to argue for a lower fraud loss amount, the Court finds that Mr. Bangiyev was not prejudiced by the efforts of his counsel. The Court declared at sentencing that it "was very conservative in looking at the seven to $20 million figure" for fraud loss. Dkt. No. 773, 36:24-25. That finding was rooted in the Court's weighing of the evidence presented during the fraud loss hearing, particularly the affidavit and testimony of Ms. Dellibovi, which "demonstrates certainly prima facie evidence that in fact the loss was greater than $7 million[.]" Dkt. No. 643, 7:13-14. The Court did not adopt Mr. Bangiyev's counsel's argument at the fraud loss hearing that "the loss amount . . . is at or roughly somewhat above $7 million . . . ." Mr. Bangiyev contends that this position amounted to an unreasonable concession of the higher fraud loss amount. But the Court recognizes that this was a strategic decision to influence the court to apply proposed changes to the fraud-loss calculation guidelines which increased the cap from $7 million to $9.5 million for the lower amount. In any case, the Court's finding that $7 million to $20 million was "conservative" establishes that the cap changes and mitigating arguments of counsel were unconvincing. The Court considered the evidence presented in the hearing to decide the fraud loss amount. Because the evidence, not the arguments of counsel, established the fraud amount, Mr. Bangiyev was not prejudiced by his counsel's strategy.[1]

With respect to the second and third issues, the Court made its sentencing determination without reliance on any of co-defendant Loz's uncorroborated statements. *See* Dkt. No. 773, 4:13-16 ("I think I've made it pretty clear that anything that the Government is relying on which isn't corroborated beyond that of Mr. Loz is just not going to be – it's not going to rise to the level of proof necessary."). Without certain uncorroborated statements from Mr. Loz, the Court

---

[1] Mr. Bangiyev also argues that the evidence presented during the hearings was insufficient to establish the fraud loss amount. *See, e.g.*, Dkt. No. 795, at 20-27. There has been no change in the factual record or controlling law which would prompt the Court to disturb its earlier factual findings.

7

adjusted Mr. Bangiyev's sentencing calculation to remove points for obstruction of justice and add points for acceptance of responsibility. *Id.*, 60:18-23. Taking all of this into consideration, the Court nevertheless found that Mr. Bangiyev's sentence, at the high end of the guideline range, was appropriate because of Mr. Bangiyev's criminal history of engaging in the same criminal enterprise for which he pleaded guilty before the Court. As the Court explained during the sentencing, in distinguishing Mr. Bangiyev from his brother and the other co-defendants:

> You [Mr. Bangiyev] are really a troubling man to me. You stood in front of a judge, you sat through a trial [in the Eastern District of New York]. The trauma must have been so significant -- half of these people were probably in the audience hoping and praying that things were going to work out with you. They were all there when you got your suspended sentence. They all were there when you came back to your home, and I assume you were on conditions of release. And you just thumbed your nose at everybody. And you thumbed your nose at the Probation officer. You thumbed your nose at the judge who gave you a real break. You thumbed your nose at all the support you had, your family. You just, you know, you just decided you were going to live the life the way you wanted to live it, right? Greedy, gambling, partying. And you were doing that at the same time you are submitting your monthly reports to the Probation Office.
>
> So you are different and you are more troubling to me because you've made the hard decision that you aren't going to be law-abiding.

Dkt. No. 773, 69:22-70:15. Based on the foregoing, the Court determined that a guideline sentence was necessary and that the sentence must be in excess of that which was imposed on Mr. Bangiyev's brother and the other defendants. The key distinguishing factor between Mr. Bangiyev and the other defendants was this prior conviction at trial for the same criminal conduct and Mr. Bangiyev's willingness to continue engaging in the conduct despite receiving a lenient sentence in his prior conviction. Thus, even if Mr. Bangiyev could show that his counsel failed to adequately present evidence of his limited culpability this would not have disturbed the Court's finding that Mr. Bangiyev flouted the law and took advantage of the leniency of the court system.

Finally, on the fifth issue, Mr. Bangiyev contends that counsel failed to adequately explain the plea agreement and the ramifications of the fraud loss calculation. This argument is fatally undermined by Mr. Bangiyev's representations at the plea allocution.

"[T]he representations of the defendant . . . at [] a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Mr. Bangiyev repeatedly affirmed in open court that he did understand the ramifications of the fraud loss calculation and the scope of the plea agreement. Mr. Bangiyev confirmed to the Court that his counsel had answered any questions he had about the plea agreement. Dkt. No. 528, 5:5-9. The Court also confirmed that Mr. Bangiyev was satisfied with the services of his counsel. *Id.*, 6:3-6. The Court asked Mr. Bangiyev whether he understood the consequences of the plea agreement. *See id.*, 7-11. The Court specifically asked Mr. Bangiyev, and he acknowledged understanding, that the fraud loss calculation would be included in the sentencing information, the parties would argue the issue, and the judge would make a decision on fraud loss on the day of sentencing. *Id.*, 10:6-18. Mr. Bangiyev further waived the right to have a jury decide the forfeiture provisions. *Id.*, 12:3-12.

Taking into consideration the evidence presented during the fraud loss hearing and Mr. Bangiyev's statements during the plea allocution, there was no prejudice to Mr. Bangiyev and no basis for reducing his sentence on any of the issues addressed at the hearings.

### B. Issue Not Raised in the Hearings

The only issue which Mr. Bangiyev raises in the Motion which the Court did not consider during sentencing is the manner of the Court's reduction of Mr. Bangiyev's sentencing guideline

9

range to account for his prior sentencing for related conduct in January 2009. Mr. Bangiyev contends that the Court's sentencing violates the double jeopardy clause of the Fifth Amendment to the United States Constitution and that the sentencing was based on an incorrect calculation of the criminal history and fraud loss amount. The Court addresses these arguments in turn.

As discussed above, Mr. Bangiyev pleaded guilty to participation in a RICO conspiracy. As part of the plea agreement, the Government dropped the conspiracy to commit counterfeiting charges. In 2009, Mr. Bangiyev was convicted at trial of dealing in counterfeit currency. The fraud loss amount in that conviction was $100,000. The presentence report for this sentencing assigned Mr. Bangiyev no criminal history points for the 2009 conviction. The Court adopted the findings of the report that the 2009 conviction was relevant conduct to the instant offense. Thus, Mr. Bangiyev's criminal history score for the 2015 sentencing was zero resulting in a criminal history category of I.

*1. Double Jeopardy*

The double jeopardy clause of the Fifth Amendment provides that a defendant shall not "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Among other things, "it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).

Mr. Bangiyev argues that the double jeopardy clause prohibits the Court from holding him responsible in the instant offense for conduct which predates his conviction in New York. Mr. Bangiyev contends that he "has paid his debt to society for this portion of the purported conspiracy." Dkt. No. 782, at 16.

Notwithstanding Mr. Bangiyev's appeal to fairness that he has paid his debt to society through the New York conviction, the law governing RICO Conspiracy charges does not

discount his earlier acts. "[I]n the context of successive prosecutions for a substantive RICO violation and for the predicate crimes used to prove RICO" the subsequent prosecution does not violate double jeopardy. *United States v. Arnoldt*, 947 F.2d 1120, 1127 (4th Cir. 1991) (citing *Garrett v. United States*, 471 U.S. 773 (1985)). As *Arnoldt* makes clear, the incorporation of the earlier sentence into the acts constituting the RICO conspiracy is not a violation of the double jeopardy clause. Accordingly, this ground for relief is denied.

### 2. Miscalculation of Criminal History and Fraud Loss

The application notes to the United States Sentencing Guideline § 2E1.1(a) state that "[c]ertain conduct may be charged in the count of conviction as part of a 'pattern of racketeering activity' even though the defendant has previously been sentenced for that conduct." Federal Sentencing Guidelines Manual § 2E1.1 (2016). However, "[w]here such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence . . . and not part of the instant offense." *Id.*

Mr. Bangiyev argues that he should have been subject to a criminal history category of II but that the fraud loss calculation should have excluded any conduct preceding the 2009 sentencing in New York. As a result, he contends that his fraud loss calculation should relate to the later conduct of the criminal enterprise which was far less substantial than the pre-2009 conduct. On this basis, he believes that a reduction in his sentence is appropriate.

The Government concedes that Mr. Bangiyev's criminal history was miscalculated because the 2009 conviction was incorporated as relevant conduct to the instant offense. Because the 2009 conviction occurred prior to the last overt act of the RICO conspiracy, it should have been treated as a prior sentence. Though the Government concedes this miscalculation, it argues that if the conviction was treated as a separate offense the correction

would have *enhanced* rather than reduced Mr. Bangiyev's criminal history category and ultimate sentence. The Government also concedes that for fraud loss purposes, any amount assessed and punished in the prior conviction should be excluded from the instant offense. The Government argues that this miscalculation did not result in any prejudice to Mr. Bangiyev because the deduction of $100,000 in fraud loss does not bring Mr. Bangiyev into the lower fraud loss category.

The Court finds that sentencing calculation incorrectly incorporated the 2009 conviction into the instant offense. However, the Court rejects the Government's argument that this would have enhanced Mr. Bangiyev's sentence. Mr. Bangiyev was assigned a criminal history score of 0 resulting in a criminal history category of I. Even if the Court had counted the 2009 conviction separately, it would have only resulted in 1 criminal history point for Mr. Bangiyev because he was sentenced to probation. *See* U.S.S.G. § 4A1.1 (awarding 1 point for prior sentences less than 60 days – including fines only, probation, suspended sentences, or deferred sentences). With a criminal history score of 1, Mr. Bangiyev still would have fallen into a criminal history category of I and been subject to the same sentence. Assuming that Mr. Bangiyev would have been elevated to a criminal history of II the Government's argument would have merit. But then Mr. Bangiyev would be arguing for a higher penalty for himself with a guideline range of 97 to 121 months.

Whether the miscalculation would have increased the sentence or not, Mr. Bangiyev's reliance on *Molina-Martinez v. United States* is misplaced. 136 S. Ct. 1338 (2016). In that case, the Supreme Court found that "a defendant who has shown that the district court mistakenly deemed applicable an incorrect, *higher* Guidelines range has demonstrated a reasonable probability of a different outcome." *Id.* at 1346 (emphasis added). Nothing in the incorporation

of the 2009 conviction would result in a lower guideline range for Mr. Bangiyev or disturb the Court's 108 month sentence.

The Court also finds that the sentencing calculation improperly incorporated the fraud loss from the 2009 conviction into the instant offense. However, the Court agrees with the Government that this miscalculation only incorporates the $100,000 for which Mr. Bangiyev was convicted and not all of the fraud loss of the conspiracy prior to 2009. Mr. Bangiyev was not charged with or convicted in New York of engaging in a sophisticated conspiracy to produce millions of dollars in counterfeit currency. He was charged only with conspiracy to make use of the $100,000 in counterfeit currency. The limited nature of the actual offense is reflected in the lenient sentence Mr. Bangiyev received in New York. That sentence does not suffice to pay back Mr. Bangiyev's debt to society for the broader conspiracy from 2004 to 2009 and Mr. Bangiyev has offered no legal basis to establish that it does.

For the foregoing reasons, the Court finds that the sentencing guidelines were miscalculated for Mr. Bangiyev but that this error did not prejudice Mr. Bangiyev and therefore does not warrant vacatur or modification of the sentence.

## IV. Conclusion

For the foregoing reasons the Court DENIES WITH PREJUDICE Defendant's Motion to Vacate under 28 U.S.C. § 2255. (Dkt. No. 781). The Court further DENIES Defendant's Motion for Bail Release. (Dkt. No. 812).

May \_\_, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge